Good morning. We're prepared to hear the argument in Eastern Coal v. the Director. Ms. Klaus? Your Honors, may it please the Court, I'm Laura Klaus, representing Eastern Associated Coal Corporation. This appeal is necessitated by the refusal of Claimant's Counsel to submit market evidence in support of a fee petition. We don't want to be here, and we shouldn't be here. The rules governing fee-shifting petitions are well established by the Supreme Court as well as by this Court. Those rules establish that the lodestar yields a fee that is presumptively a reasonable attorney's fee. Those cases establish that it is the fee petitioner's burden to establish that lodestar market rate. How does a petitioner go about doing that when the petitioner cannot enter into a fee agreement with an individual client? On that, too, the case law is clear. What the attorneys receive from fee-paying clients in non-fee-shifted litigation is the market rate. And if those attorneys have no fee-paying clients, then they can submit proof of what similarly situated attorneys earn for similar work in the geographic location. The claimant's attorneys here have not done that. The case law is clear that the claimant's burden in this case would not be satisfied by the claimant's assertion of what they believe their hourly rates should be. It's not satisfied by prior fee awards when those fee awards are not based on a market analysis or where the fact finder did not determine a prevailing market rate. And that burden is not satisfied by resort to fee surveys like the Altman and Wiles survey when the survey covers a broad geographic area covering urban as well as rural areas covering all areas of practice. Okay. So in this case, let's try to be a little practical, and I think that might help the analysis. Where you have only one attorney doing this kind of case or one firm doing this kind of case, black-lung representation in the state, how does that attorney then establish the market in Virginia? Well, there's two responses to that question. First, there are a limited number of attorneys who practice in this area, but it is not one firm. But even if it were, the rate for black-lung litigation is not the market rate. The Supreme Court has explained that contingent fee litigation or awards from contingent fee litigation like this cannot set the market rate. It would be entirely circular. So the attorneys have to look to what fee-paying clients pay other attorneys in the same geographic location. There are multiple attorneys who practice in Norton, Virginia, who practice in Wise, Virginia. There are multiple counties surrounding the area where counsel practices. So you're saying then that the attorney can look at what other lawyers in that area get, let's say, to represent business clients on breach of contract suits or to something that would have nothing to do with black-lung litigation, let's say real estate mergers and acquisitions. I think comparable would be perhaps Social Security cases, workers' compensation cases, some type of litigation that's similar to the type of litigation that's presented here. I'm not sure that you would compare it to... What's the fee structure for workers' compensation? Excuse me? What's the fee structure for workers' compensation? I don't know. The point is that it's the claimant's attorney's burden to establish that. We countered and have tried to obtain discovery over the many litigations that we've had in the agency. The agency refuses to permit us to do discovery. What about how much you pay the coal companies pay their lawyers? Would that be a good one? It depends. If it's in the same geographic location, perhaps. Well, they're litigating in the same geographical. Does it make a difference where the firm is from? Well, certainly it does because it would depend on the economy. An attorney who practices in Chicago doesn't have the same fee structure or command the same fees as an attorney, say, in Norton, Virginia or in Grundy, Virginia. Oh, I see. So if you're from Grundy, Virginia and you go off to Chicago and litigate a case with all these silk stocking firms and their fee will be based on $400 or $500 because you're from Grundy, oh, you better get $100 because you've got to get the fee they get at home. Well, the theory is that counsel should be made whole for representing in this particular matter. So it's the amount of fees that they have foregone by doing this representation and then once they win then they're compensated or reimbursed for that lost opportunity or for the opportunity that they had. It's not a windfall. And the case law has been clear that if an attorney can command a rate of $100 an hour, if an attorney from Chicago would come to Grundy, for example, or Norton, and that attorney in Chicago has an hourly rate of $365 an hour, but the attorneys in Norton, Virginia have a rate of $100 an hour, that attorney is going to be the Chicago attorney would get $100 an hour, not $360 an hour. The attorney's practice here consists mostly of black-lung cases. I don't know the answer to that question, which is why the burden is on the fee applicant to produce that information. How do you deal with our cases, Brown and Holliday, where we said that it was appropriate in a harbor workers case that the board generally can look to previous awards in the relevant marketplace as a barometer for how much to award counsel in the immediate case. So didn't we, in the context of Longshore and Harbor workers, approve exactly what was done in this case? But there's one piece missing, and it's not answered in Brown. First, because I don't think that anyone disputed it in Brown. But the missing piece is whether those prior fee awards were based on a market analysis. And so the relevant case would be Cox. The relevant case would be the Supreme Court's decision in Perdue v. Kenny A, where the courts discuss what... Right, but in Cox, didn't we say that the infirmity was the fact that Wolfe did not submit evidence of fees he has received in the past? Yes. That was the infirmity identified in Cox, and Wolfe has done that in this case. He submitted, and the court took notice of what Wolfe had received in the past. So why does Cox support you? Because Cox couldn't address whether the fee petitions that the past fee petitions that Wolfe could have submitted were based on a market analysis. And so look at the fee petitions that Mr. Wolfe referenced in this case, although not submitted, he referenced. One of them included the decision that was reached in Cox itself that the court, this court, vacated. Those fee awards predate Cox. They predate Kenny A. They predate most of the cases that talk about what the proper standard is. If the courts had conducted a proper market analysis in any of those cases, they would certainly be relevant. But the Claimants Council hasn't produced those fee petitions. And the Claimants Council... What do you mean by market analysis? Determining what fee-paying clients pay for similarly situated attorneys in the same geographic location to identify the prevailing market rate for attorneys in that geographic location. In black lung cases? In any type of routine civil litigation. And as the court said in Cox, you could go outside, obviously, the black lung, where there is no fee-paying market. You could go to Social Security. You could go to other workers' compensation. Can the rate take into account the fact that an attorney may represent a client in a number of cases, and if the client doesn't prevail, the attorney gets nothing? No. Because risk of loss or contingent fee is not properly included in that market rate. What about fees in criminal cases? Well, that would be up to the finder of fact, whether they would regard that as comparable. You're saying representing somebody on a murder is comparable to representing somebody on a black lung case? I wouldn't, but it wouldn't be up to me. It really would be up to the fact finder. And in this case . . . I thought you told me the sine qua non of the matter is what the opportunities are lost. If I do criminal cases normally, that's what I'm losing when I do this case, correct? Correct, but these lawyers do mostly civil litigation. I believe they do mostly agency litigation. Yeah, but this is not just for this case. I know that litigants, you would need justice here particularly, but it's also a broader brush than that. If you normally do criminal, then you'd have to admit, wouldn't you, that you could use criminal fees as well? Because you know contingency is unethical, I know, in Virginia, I think in most states. So therefore, they have to be fee-based clients, right? So what's wrong? They wouldn't be disqualified because it's criminal, would it? I don't know the answer to that. I suspect not, but it would really be up to the finder of fact. Well, workers' comp, you don't have fee-based clients, do you, in Virginia? I don't know the answer to that question. You don't know? I know you do. So what's the market? You don't know that it's workers' comp. Do you know whether you have fee-based clients in Virginia in Social Security? There are fee-based clients. You do know that, okay. So other than Social Security, you're saying it's just the general civil practice? That would generally be where fee-paying clients would pay attorneys to represent plaintiffs. You know what's bothering me about this is the practicality. It just seems to me that if the body that has the expertise is the tribunal that hears these cases again and again and again, and they're the ones who know what these cases are worth, and it seems to just make so much more sense to have that fee, the prior fees reflected or determined by somebody who knows what's going on rather than somebody who's doing a mergers and acquisition or somebody who's defending in an employment discrimination suit. It doesn't really make practical sense. Could you answer that? Yes, because nobody's removing the authority of the administrative law judge or the benefits review board from making that determination. But what the Supreme Court said in Kenny A. was that the goal is to achieve some objectivity so that it's not determined by the judge's subjective views of what a reasonable rate is or how well the attorney performed or how many times that that judge has seen that particular attorney. The Supreme Court said a lot of things, and one of the things it said is that a fee proceeding shouldn't be a second major litigation. And there's a limit to which we can simply script the number of steps and hoops that you have to go through at a certain point in time where you interfere with the fact-finding function. The fact-finder has to enjoy a certain amount of latitude in reaching these conclusions. That's true, but there also has to be a certain amount of objectivity so that it is a workable process. And at the end of the day, what the claimant has pinned its hopes on is the avoidance of a second major litigation. But that is a litigation of counsel's own making, because had counsel simply produced what attorneys in his geographic location are paid by fee-paying clients, we wouldn't have to be here. We would accept that, and the court wouldn't have to decide this case. But over and over and over again, what we find is counsel relying on prior fee petitions that weren't based on a market analysis and just piling on one after another after another. And the second component to that, and it also affects the hourly rate, is the use of the 15-minute billing increments. All right, well, you have some time for rebuttal on that, and we'll hear from you. Thank you, Your Honor. Okay. Mr. Gilligan. May it please the Court, my name is Ryan Gilligan, and I represent the respondent in this matter. This case concerns the award of attorney fees issued by the administrative law judge in the Benefits Review Board, which this court reviews under an abusive discretion standard and to determine whether the judges below erred as a matter of law. The fee awards below are reasonable in accordance with the law and supported by the specific facts of this case. The petitioner's primary contention challenges the hourly rates awarded, and I'd like to first address that issue. The adjudicators below followed the Lodestar analysis as found in the regulations, which is set on numerous factors to arrive at a reasonable hourly rate. The purpose of this fee-shifting statute is to encourage attorneys to take these types of cases. I think what she's saying, and it would be interesting to hear your response, is that you get a certain hourly fee at some point in the past, and then it just becomes locked in, and that there's no—and if the original fee wasn't based on some kind of market analysis or whatever, and the courts say, well, this is the hourly fee, that you just get one fee which is sort of in place indefinitely. What do you say with respect to that? Yes, Your Honor. I don't believe the fee is in place indefinitely. In this case, the fee petition we filed, the first fee petition, was eight days after this court's decision in Westmoreland Coal v. Cox. That decision said that we could submit evidence of fees received in the past as evidence to establish the hourly rate. In this case, what we did was submitted, and I agree with Petitioner, one of those awards was vacated. That was the Cox decision, but we submitted 20 examples of similar hourly rates by six different administrative law judges who presided over the case over a period of years, and we set that amongst other factors to determine the hourly rate in a specific case. I don't believe it's static, that the hourly rate is a static figure, but based on the evidence presented to the administrative law judge or the Benefits Review Board, it was their determination to make as to whether that fee is reasonable for the representation, which takes into account the other factors, including the qualifications. In this case, Mr. Wolf, who's the lead attorney, has over 35 years' experience representing black loan claimants. I don't know of anybody in the country with that type of experience representing minors. Counsel, the issue, though, is that the cases that you referenced, the pre-Cox cases, how do we know that those decisions were not similarly infirm in the Cox analysis as well? We looked those things up, and it's nothing other than the fact that they were awarded. There's no evidence that the market rate was established in those cases, so how do we know they were not similarly infirm, just like the Cox case? Well, they were awarded and uncontested and paid, and I believe that establishes what the market. That doesn't get you there, though, because Cox says you have to do a little bit more. The low star is important in those things in analysis, but where's the evidence of the market? Do you disagree that you don't have to do that? I don't disagree with that at all, Your Honor, but I- You did do that, did you? You don't have any affidavits from anyone in the local practice as to what their hourly fees are, do you? Well, the difficulty is to find a similar case with the delay in payment, with the contingency nature, with the complexity of these cases is very difficult. What market-based evidence did you submit? We felt that the market-based evidence was the decisions in the past, and we submitted a survey of the region of the hourly rates, and I disagree with Petitioner that our practice is confined to where one of our offices is. We have numerous offices, but our practice representing coal miners is pretty much at a national state at this point, but it primarily is Virginia, West Virginia, Kentucky, eastern Tennessee, and northwestern North Carolina. So it's a regional-based practice, and as the administrative law judge noted, the hourly rates we requested were below the median range for the South Atlantic region. So we offered to the judge, and the judge accepted based on the facts of the case. We've consistently received these awards, and given the fact that there is no comparable litigation, Social Security is a contingency-based. Our firm also does Social Security, and you get a percentage of the awarded back pay, and workers' comp is also generally a percentage-based system. So by looking to the previous awards in this case, the judge gained the barometer of what we've been receiving, and that comp- Why should you be limited? Go out and find somebody who does some bond work in your area. That's what I do. That's civil. You know, do something. I mean, you're not cabined by workers' comp and Social Security. Why can't you just get affidavits from people that do, I think, criminal practice? Because criminal practice normally yields a pretty good hourly rate. I mean, because you go up there and do a traffic case for $500, and you could do five in an hour. Yes, Your Honor, and we have evolved. I mean, this is one of the first fee petitions we submitted after Cox, and we have evolved with- You asked my question, why didn't you? Why didn't we? Because we believe we are following the Cox decision by submitting evidence of what we'd received in the past, which was also in the B&G mining versus Bentley in the Sixth Circuit, and we also cited to a Seventh Circuit decision, which also looked to the prior fee awards. Let's give you an example. One of the cases you referenced is the very case that obviously was overturned. What did you do differently than you did in that case? What we did is the case was remanded back to the administrative law judge, and we did exactly. We submitted evidence of fees we've received in the past, and the case never went further. And the case never went any further. So you want us to really revisit Cox and see whether Cox really meant what it said when it says, presenting fees that you were awarded in the past is sufficient in and of itself. You want us to restate what Cox meant? Because where the counsel said that, no, it said that because that's all they had to deal with, but they really insist upon some positive evidence of market rate. What do you want us to do? I don't know that we asked the court to revisit Cox because the adjudicators below interpreted Cox as evidence of fees in the past, does can establish the market rate when you don't have fee-paying clients. And it is consistent with the Sixth Circuit's decision. So I don't believe we were asked. That was our interpretation of Cox, and that was a panel before the Benefits Review Board, and numerous administrative law judges up until this point. Contrary to the petitioner, we haven't sought to overly extend this litigation, as the court can see from the record. This was an ardently challenged case. This is a rare form of black lung disease. The petitioner wants to claim this is an average case. And, yes, I will agree that I've already ---- That would go to the hours worked, though, rather than the market rate, would it not? I think the complexity of the issues, it goes to ---- The number of hours worked more so than the rate you charged. It is a factor in the rate, but, yes, it does go to the hours. And the hours have been contested in this case, which, again, use of quarter-hour billing was found in the regulations. And we believe that the proper standard is whether the hours were reasonable. In this case, the petitioner contested essentially 75% of our charges for the litigation of this case. Well, would you care to argue from, as Judge Keenan said, the practical aspect, to do what your opponent says would just not be practical? If you submitted an affidavit, you think it would be too low? Is that really what your argument is? If you submitted affidavits of what local attorneys get for fee basis, it would be too low? I'm not specifically aware of what the fee-paying-based attorneys in my region charge, but I do believe it would be too low because this type of litigation, we only get paid if we're successful. And black loan litigation is not known for having a high success rate. And, you know, as I mentioned at the onset of this argument, that this lodestar system was developed to encourage attorneys to engage in this practice. And the type of resistance we receive in this case, this case was filed in 2005, and we haven't received anything in compensation. And so to be able to stay in the market, to be able to stay representing minors, we have to be compensated in a means to keep our practice going. So it's totally different. As the petitioner, they get paid for every minute they spend on a case. I don't know their hourly rates. They don't release them. I'd be interested to know them. But when we only get paid after an extensive, lengthy litigation that determines on how far the appeals process wants to go, the average case that's contested is at least three years and can go over ten years, as many of the cases that end up before this court. In this case, the issue on the merits was decided well over a year ago, and we continue to litigate these fees, and we remain uncompensated for our work. So a local attorney who's getting paid immediately, we believe it's a totally different system, and that's why we submitted the fees that we've been consistently receiving by judges familiar with the type of practice that consistently awarded each one of those decisions was determined by a judge to be reasonable. It is a niche practice. There are few practitioners taking these kinds of cases. We take probably, without question, the largest number of minors in the country, and as we cited in our brief, the 2009 GAO report indicated that minors are still having difficulty obtaining representation in these types of cases because of the simple fact that the litigation is so lengthy that attorneys can't stay in business. They can't receive compensation. So the evidence that the petitioner wants us to rely on is whatever's the lowest rate, and in this case, they've cited district director decisions, and they want to say the market rate is whatever the lowest rate is, and they want to bind us to our specific city where our principal office is, but it's a regional practice, and that's why we attempted to cite to the factors in this case, and candidly, given this court's decision in Cox, we thought we were following the law, and the adjudicators below agreed. Furthermore, the amount of hours extended in this litigation, given the complexity of this unique issue, is not excessive at all, and the judge subtracted a large amount of hours nevertheless. Is there any compensation for the number of hours that are spent litigating attorney's fees? Yes, Your Honor. We do get compensated for litigation of not the preparation of the fee petition but the litigation of the fees, but it's becoming now, this case represents, this is just after Cox, and the fees are now, is ardently contested as the merits of entitlement, and it's becoming, I mean, the field becomes less, smaller and smaller and smaller to take these types of cases because it's virtually impossible to receive compensation. The cases have to be either exhaust appeals or they at least go to the benefits review board. It's a very, very difficult system, and it's not one that a lawyer can just enter and understand these medical issues and this complex regulatory system. I wouldn't compare it to the average practice occurring in our specific county where our office is located. Are you Lee County or Scott County? Wise County, ma'am. Wise, I'm sorry. Yes, but our practice extends down into Lee County and Scott County. We have cases, 10th Circuit, 11th Circuit, quite a few in the 6th Circuit, and the 6th Circuit is routinely awarding fees now based on the same evidence we're offering in this case, but we obviously couldn't have offered it. We couldn't change the record. Have you ever tried to get requested how much the coal companies are paying their lawyers? Your Honor, I believe I read one case where it was the claimant's representative filed discovery wanting to know what the petitioner's law firms receive, and that was denied. I would love to know what the petitioners are receiving in this case. It seems to me it's probative because at least if it doesn't directly establish a market, it goes to whether or not yours is excessive and out of the realm. Absolutely, and not to mention they're getting paid for every minute of every case, no matter what the outcome, where it's totally contrary on our side of the fence. I think that it's absolutely probative evidence for the court to seek what the petitioner's attorneys are getting for the same work. In this case, this law firm entered the case after the administrative law judge awarded benefits, and so began this extensive appellate process. We believe that the extensive litigation that's been performed in this case was compensated by the judge at a reasonable hourly rate for a reasonable number of hours. It was in accord with this court's decision in Cox and the B&G versus Bentley case in the Sixth Circuit, and if there are no further questions from the court, we'll rest. Thank you, sir. Thank you. Three points. First, risk of loss is not to be calculated or figured into the hourly rate. The idea is that counsel who are taking on contingent fee cases will screen their cases and bring meritorious cases, but risk of loss is not a factor. The Supreme Court had said so in no uncertain terms. Nor is delay in payment, especially where counsel requests their current hourly rate, so they're getting paid for the delay in payment. Second, if prior fee awards were relevant, then this ALJ failed to consider all the prior fee awards. The Employers' Council submitted numerous fee petitions, which showed that the hourly rate that other attorneys request who practice in a similar field was far less than the $300 an hour requested by Mr. Wolf, far less than the $100 per hour requested by the legal assistants. It showed $50 an hour was the rate that was awarded for the legal assistants, and Mr. Wolf's fees ranged anywhere from $200 to $300. Mr. Gilligan's fees ranged from $125 to $175. The judge provided no explanation why he rejected those other fee petitions if those prior fee petitions were relevant. So to the extent that they were based on a market analysis, that explanation was absent here. And third, with respect to the 15-minute intervals, counsel billed 15 minutes for every piece of paper, 15 minutes for a letter that said, Dear Judge, this is to inform you of a change in counsel for the director. While the appeal of this case is pending, before the Benefits Review Board, the director will be represented by an attorney from the Washington office. Do regulations permit billing on quarter-hour increments? The regulations say that counsel may bill on quarter-hour increments, but those regulations also say that the fees awarded are to be reasonable. When a counsel bills 15 minutes to do something that should take one minute, 30 seconds, or two minutes, the effective hourly rate for that work is not... Well, aren't you assuming, though, that counsel did nothing in order to prepare for writing that letter? What if counsel had to gather information in order to prepare that letter? This is a letter submitted by the director, so counsel billed to read this letter. It wasn't a letter that counsel created. Okay, well, I know that... Don't you, though, have other work that you have to do sometimes in relation to something? In other words, when you run a quarter-hour billing or a tenth of an hour or whatever your practice is, things aren't demarcated exactly. So isn't that why we rely on the discretion of the person who's setting the fee award and why it really shouldn't be up in an appellate court on this issue? Yes, and that's why the court should, if it doesn't deny the petition because of the failure to establish a market rate, it should return the case to the administrative law judge to do the judge's job. That wasn't done here. The judge didn't explain why he rejected the proof that was submitted by the employer's attorney with respect to other fee petitions, if that's relevant. The judge didn't determine a prevailing market rate. The claimant's counsel did not submit the evidence that was necessary to do that. There was one question that Mr. Gilligan, one point Mr. Gilligan raised, that if every fee dispute is going to be this kind of slog with appeals and everything else, is there a danger of this type of practice drying up? I can't answer that question, but what I can answer. I mean, there are not a lot of attorneys in it. It has tremendous startup costs, and if you are going to make a specialty of this kind of litigation, that means there are all sorts of other fields of law that you're not going to have the time to take up in. It's very time-consuming. It's very record-intensive, and there's always a delay in payment, and there's always likely to be a long slog. Are we in danger of simply drying up this area of practice so that minors will find it difficult to get legal representation? I don't know the answer. What I do know is that there are— You don't know a lot of answers this morning. I don't think you can get by with that but so many times, and I want to know what is—because the point he raised struck a chord with me because Congress has passed this program, and presumably Congress wanted deserving minors to receive benefits, and they're not going to receive those benefits even if they have suffered seriously from a long period of time in the mines if payment is always delayed, if it's always contested, if court of appeals are reversing for abuse of discretion and trying to get into the fact finder's domain cumulatively. What concerns me here is what this does to this area of practice, to this particular congressional program, and to the ability of people whose livelihood has been dependent on the mines to recover if damage has been done to their lives because they won't recover in the absence of legal representation. It's too complicated. And so I worry about the point that Mr. Gilligan makes. It struck a chord with me. I think our goal here is to avoid having this type of litigation. The employers do not dispute, and the Eastern Associated Coal Corporation will gladly pay a reasonable attorney's fee for claimants' counsel who succeed in obtaining benefits for their clients. But we do have the right for our own client to insist that it is a reasonable fee based on a reasonable hourly rate, as the Supreme Court and this court has held. If claimants' counsel submit the type of evidence that this court These rates didn't seem to me to be wildly out of line. They were differentiated. Not everybody just received the same rate. They were carefully graded. I'd seen some figures that had just struck me as some kind of outrage, maybe, but I'm not sure I saw that. Well, I think that the hope is, by this case, we can avoid the disputes that we've been having in the agency before the Administrative Law Judges and the Benefits Review Board if we have clarity for what is required of claimants' counsel. I think that the courts have provided that clarity. I thought it was going to continue the disputes because it would encourage all these things to be appealed, wouldn't it? No, because if counsel submits the evidence that they're supposed to submit, we'll accept it, it will be paid, and it will be over. And that's what we hope to achieve here. All tied up in one nice little package. In a pretty bow. I doubt it will kind of play out that way. All right, thank you very much. And we'll come down and greet counsel and move into our next case.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Barbara Milano Keenan